**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

GLORIA SMITH, *

Plaintiff, *

v. *

NATIONAL CREDIT SYSTEMS INC., * Civil No. 25-3044-BAH

Defendant. *

* * * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Gloria Smith ("Smith") brought suit against Defendant National Credit Systems, Inc. ("NCS") alleging a violation of § 1692c of the Fair Debt Collection Practices Act ("FDCPA"). ECF 1. Pending before the Court is NCS's motion to dismiss (the "Motion"). ECF 10. Smith filed an opposition, ECF 12, and NCS filed a reply, ECF 14. All filings include memoranda of law, and some filings include exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). Accordingly, for the reasons stated below, NCS's Motion is **DENIED**.

## I. BACKGROUND

Smith alleges that on March 31, 2025, she "received text communication from Defendant attempting to collect an alleged debt" owed to The Residences at 300 St. Paul Apartments. ECF 1, at 2; ECF 1-2, at 1 (screenshot of text messages between Smith and NCS).[2] Smith responded to

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

[2] The Court may consider "documents attached to the complaint, 'as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180

the text message, "I am not paying this." ECF 1, at 2; ECF 1-2, at 1. NCS then replied, "Thanks for your message! What is the email address we have on file for you? Reply STOP any time to unsubscribe." ECF 1-2, at 1. Smith responded again: "I don't know who you are or if you even have the right person but I am not paying this[.]" *Id.* NCS again replied with the same thank you message and again asked for Smith's email address. *Id.*

Smith contends that the thank you text message was NCS's way of "continuing to try to collect . . . in violation of 15 U.S.C. § 1692c(c)." ECF 1, at 3. As a result, Smith alleges she suffered damages "in the form of intrusion upon seclusion, invasion of privacy, loss of productive time, decreased ability to focus on tasks while at work, frustration, emotional distress, anger and anxiety, amongst negative emotions." *Id.* Smith filed the complaint on September 15, 2025, bringing one claim under 15 U.S.C. § 1692c(c). *Id.* On October 20, 2025, NCS moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF 10. The Motion is ripe for decision.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a complaint for lack of subject matter jurisdiction. "Rule 12(b)(1) governs motions to dismiss for mootness and for lack of standing, which pertain to subject matter jurisdiction." *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019); *see also Pruitt v. Resurgent Cap. Servs., LP*, 610 F. Supp. 3d 775, 779 (D. Md. 2022) (explaining that motions to dismiss for lack of standing are considered under Rule 12(b)(1)). "Motions to dismiss for lack of subject matter jurisdiction are properly granted where

(4th Cir. 2009)). A document is "integral" when "its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (citation omitted) (emphasis omitted). Smith attaches to her complaint a screenshot of the text message conversation between her and NCS, the authenticity of which NCS does not challenge. *See* ECF 1-2. The Court will consider this document as it decides the Motion.

a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (citing *Crosten v. Kamauf*, 932 F. Supp. 676, 679 (D. Md. 1996)).

Federal Rule of Civil Procedure 12(b)(6) governs dismissals for failure to "state a claim upon which relief can be granted." In considering a motion under this rule, courts discount legal conclusions stated in the complaint and "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court then draws all reasonable inferences in favor of the plaintiff and considers whether the complaint states a plausible claim for relief on its face. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

"The complaint must offer 'more than labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 F. App'x 745, 747 (4th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At the same time, a "complaint will not be dismissed as long as [it] provides sufficient detail about [the plaintiff's] claim to show that [the plaintiff] has a more-than-conceivable chance of success on the merits." *Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014).

Because Smith brings this suit pro se, the Court must liberally construe her pleadings, holding them to a less stringent standard than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This leniency has its limits, though. "A court may not construct the plaintiff's legal arguments for h[er], nor is a district court required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" *Runge v. Barton*, Civ.

No. 6:08-0231-GRA, 2009 WL 3245471, at *1 (D.S.C. Oct. 2, 2009) (first citing *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993), then quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985)), *aff'd*, 368 F. App'x 361 (4th Cir. 2010).

## III. ANALYSIS

### A. Rule 12(b)(1)

NCS first argues that Smith lacks Article III standing to bring her claim. ECF 10-1, at 2. Whether a plaintiff has standing to sue is a threshold inquiry for any lawsuit. *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 597 (2007). "To establish Article III standing, a plaintiff must show (1) an 'injury in fact,' (2) a sufficient 'causal connection between the injury and the conduct complained of,' and (3) a 'likel[ihood]' that the injury 'will be redressed by a favorable decision.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58, (2014) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

NCS argues that Smith fails to plead an injury in fact that is traceable to NCS's conduct.[3] ECF 10-1, at 4. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339. "[A] plaintiff may not satisfy the strictures of Article III by alleging 'a bare procedural violation, divorced from any concrete harm.'" *Edmondson v. Eagle Nat'l Bank*, 344 F.R.D. 72, 76–77 (D. Md. 2023) (quoting *Spokeo*, 578 U.S. at 341). In order to show "injury in fact," a plaintiff must establish a "concrete and particularized" and "actual or imminent" "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. "A concrete injury is one that actually exists, is real, and not abstract." *Opiotennione*

[3] Since it asserts no injury, NCS does not challenge the redressability element of standing.

*v. Bozzuto Mgmt. Co.*, 130 F.4th 149, 153 (4th Cir. 2025) (citation modified). An injury is "particularized" where it "affect[s] the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Smith's complaint alleges that, based on NCS's alleged violation of the FDCPA, she suffered injuries "in the form of intrusion upon seclusion, invasion of privacy, loss of productive time, decreased ability to focus on tasks while at work, frustration, emotional distress, anger and anxiety, amongst other negative emotions." ECF 1, at 3. A plaintiff establishes an injury-in-fact when she alleges that "she suffered and continues to suffer actually existing intangible harms that affect her personally: emotional distress, anger, and frustration" resulting from an FDCPA violation. *Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676–77 (4th Cir. 2017) (internal quotation marks omitted); *see also Moore v. Blibaum & Assocs., P.A.*, 693 F. App'x 205, 206 (4th Cir. 2017). Smith has alleged the same intangible harms here—namely, "decreased ability to focus on tasks while at work, frustration, emotional distress, anger and anxiety, amongst other negative emotions." ECF 1, at 3. Though the Court may share NCS's doubts as to the magnitude of Smith's injuries, Smith has nonetheless sufficiently pled the existence of an injury in fact. *Cf. Westerman v. Constar Fin. Servs., LLC*, Civ. No. JKB-21-2255, 2021 WL 4554334, at *1 (D. Md. Oct. 5, 2021) (finding standing established where the plaintiff alleged emotional distress along with "pecuniary harm by requiring him to incur attorney's fees"); *Brown v. Alltran Fin., LP*, No. 1:21-CV-595, 2022 WL 377001, at *6 (M.D.N.C. Feb. 8, 2022) (finding no concrete harm alleged where the complaint "contain[ed] only vague allegations of harm" and "no allegations of emotional injury").

"To satisfy standing's causation requirement, the alleged injury must be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent

action of some third party not before the court.'" *DiCocco v. Garland*, 52 F.4th 588, 592 (4th Cir. 2022) (alterations in original) (quoting *Lujan*, 504 U.S. at 560). A plaintiff must show a "causal connection between the injury and the conduct complained of" that is not excessively attenuated. *Lujan*, 504 U.S. at 560–61. At the motion to dismiss stage, the burden of showing traceability is relatively modest. *Lowy v. Daniel Def., LLC*, 167 F.4th 175, 194 (4th Cir. 2026). Here, Smith alleges that her emotional distress and other injuries are a direct result of her receipt of the allegedly "illegal debt collection communications" from NCS. ECF 1, at 3. NCS contends "it is unreasonable to comprehend how" its text messages "could have caused the harm alleged." ECF 10-1, at 6. But "'the Court must assume the truth of the allegations' of traceability in an FDCPA claim during the pleading stage." *Cooper v. I.Q. Data Int'l, Inc.*, Civ. No. RDB-24-2120, 2025 WL 1827956, at *4 (D. Md. July 2, 2025) (quoting *Richards v. NewRez LLC*, Civ. No. ELH-20-1282, 2021 WL 1060286, at *20 (D. Md. Mar. 18, 2021)). As such, Smith's allegations, accepted as true, are sufficient to establish traceability. *Cf. id.* (finding allegations that defendant caused emotional distress by stating the plaintiff owed an inflated amount of debt sufficient to establish injury and traceability for purposes of standing). Accordingly, Smith has pled enough facts to establish standing to proceed.

**B. Rule 12(b)(6)**

Smith alleges that NCS's text message violated § 1692c(c) of the FDCPA. ECF 1, at 3. "The FDCPA protects consumers from abusive and deceptive practices by debt collectors[.]" *Stewart v. Bierman*, 859 F. Supp. 2d 754, 759 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013). "The FDCPA is a strict liability statute and a consumer has only to prove one violation in order to trigger liability." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 276 (D. Md. 2015) (quoting *Bradshaw v. Hilco Receivables, LLC*, 765 F. Supp. 2d 719, 725 (D. Md. 2011)). "To state a claim under the FDCPA, the plaintiff must allege that:

(1) the defendant is a debt collector under the FDCPA, (2) the plaintiff is the object of a collection activity arising from consumer debt, and (3) the defendant engaged in a debt collection activity prohibited by the FDCPA." *Id.* NCS argues that Smith has failed to plead the third element of her claim. *See* ECF 10-1, at 7.

The relevant part of the FDCPA provides that, except under certain enumerated exceptions not raised by NCS, "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt." 15 U.S.C. § 1692c(c). A violation of § 1692c(c) is triggered only after a consumer provides written notice of their refusal to pay a debt or request for the debt collector to cease communication. *See Sloan v. LVNV Funding, LLC*, Civ. No. DLB-25-641, 2025 WL 2997582, at *4 (D. Md. Oct. 24, 2025). Smith alleges that after she responded, "I am not paying this" to NCS's text message "attempting to collect an alleged debt," NCS sent two texts stating: "Thanks for your message! What[']s the email we have on file for you?" ECF 1, at 2–3. Smith asserts that these follow-up text messages seeking her email address violated § 1692c(c). *Id.* at 3.

As a threshold matter, NCS does not appear to contest at this stage that Smith's text messages documenting her refusal to pay any debt owed constituted a writing reflecting that she refused to pay a debt within the meaning of 15 U.S.C. § 1692c(c). *See* ECF 10-1, at 7 (focusing the inquiry solely on whether Defendant's follow-up texts constituted a communication under FDCPA). Thus, the question before the Court at this early stage is whether text messages seeking to obtain her email address are prohibited communications under the FDCPA. *See* ECF 10-1, at 7.

The FDCPA defines a communication as "the conveying of information regarding a debt directly or indirectly to any person through any medium." *Id.* § 1692a(2). "Determining whether a communication constitutes an attempt to collect a debt is a 'commonsense inquiry' that evaluates the 'nature of the parties' relationship,' the '[objective] purpose and context of the communication[],' and whether the communication includes a demand for payment." *In re Dubois*, 834 F.3d 522, 527 (4th Cir. 2016) (quoting *Gburek v. Litton Loan Serv. LP*, 614 F.3d 380, 385–86 (7th Cir. 2010)); *see also Olson v. Midland Funding, LLC*, 578 F. App'x 248, 251 (4th Cir. 2014). "A communication is in connection with the collection of a debt if a review of these factors demonstrates that a communication was made to induce the debtor to settle the debt." *Bender v. Elmore & Throop, P.C.*, 530 F. Supp. 3d 566, 575 (D. Md. 2021).

As to the nature of the parties' relationship, neither party disputes that NCS is a debt collector and Smith is a debtor, *see* ECF 10-1, at 1 ("NCS is . . . collecting on an apartment debt allegedly owed by Smith."), "which itself supports the Plaintiff's position that the communications [were] 'in connection with' the collection of a debt." *Johnson v. Brock & Scott, PLLC*, No. 5:11-CV-474-F, 2012 WL 4483916, at *15–16 (E.D.N.C. Sept. 27, 2012).

As to the second factor, the literal text of the messages makes clear that the sender sought only an email address and made no explicit mention of any debt owed or the recipient's need to pay it. *Bender*, 530 F. Supp. 3d at 576 (noting at minimum, the Court must look at whether the texts "could be understood by an unsophisticated consumer as a demand for payment"). The Court is, of course, mindful of the fact that "[e]ven if it does not contain 'an explicit demand for payment,' a communication may still be an attempt to collect a debt." *Webb v. Carrington Mortg. Servs. LLC*, Civ. No. SAG-24-1950, 2025 WL 213950, at *8 (D. Md. Jan. 16, 2025) (quoting *In re Dubois*, 834 F.3d at 527). However, the text messages do not offer repayment options or

reiterate the amount of the debt owed, *Gburek*, 614 F.3d at 386, and thus do not bear the tell-tale signs of an effort to collect a debt.

Thus, the viability of Smith's claim hinges on the "the purpose and context of the communications," which, "viewed objectively—are important factors[.]" *Gburek*, 614 F.3d at 385. As Judge Blake noted, "[t]here is little authority construing § 1692c(c)'s language prohibiting communication 'with respect to' the debt[.]" *Bender*, 530 F. Supp. 3d at 575. However, it is clear that this prohibition does not prohibit *all* communication with a debtor, only such messages "made to induce the debtor to settle the debt." *Id.* Further, the Court must be guided by a "commonsense" approach. *In re Dubois*, 834 F.3d at 527. The context here, at least as alleged by Smith, is that the texts from NCS came immediately after Smith was reminded of a debt, and unequivocally said she was not paying it.[4] Though the texts did not reiterate a demand for payment and only sought Smith's email address, that the request came on the heels of what NCS does not dispute was a notice of a debt strongly indicates that the request for the email address was made with respect to the debt owed by Smith. *Cf. Ruth v. Triumph P'ships*, 577 F.3d 790, 798–99 (7th Cir. 2009) (finding a privacy notice was in connection with the collection of a debt because the parties' relationship was that of debtor and debt collector and the privacy notice was sent in the same envelope as a collection letter). Smith has plausibly alleged facts, if only barely so, suggesting that the messages between Smith and NCS requesting Smith's email address were sent in connection

[4] The Court notes that earlier text messages reference a URL, and the meaning of the specific texts that precede the ones that Plaintiff alleges violate the FDCPA is not entirely clear to the Court. Of course, NCS concedes at this stage that the earlier texts were efforts to collect a debt, and contend that the text messages at issue do "not seek to collect the debt or reference the debt, rather [they] seek[] information to confirm that NCS is communicating with the correct person." ECF 10-1, at 2. There is nothing in the text message itself reflecting this purpose and this assertion goes beyond what appears on the face of the complaint. As such, this argument is better addressed at a later stage of the case.

with the collection of Smith's debt, and thus were prohibited under the FDCPA, since Smith had unequivocally stated that she was not paying the debt. As such, her claim will survive.[5]

The case cited by NCS in support of its position does not alter the Court's conclusion. *See* ECF 10-1, at 7 (citing *Brown v. Van Ru Credit Corporation*, 804 F.3d 740 (6th Cir. 2015)). In *Brown v. Van Ru Credit Corporation*, the plaintiff brought a claim under § 1692c(b) alleging a prohibited third-party communication regarding his debt. *See* 804 F.3d at 742. The plaintiff specifically took issue with a voicemail left for a third party that made no reference to the plaintiff's debt, but instead merely asked for a return call from the payroll department. *Id.* at 741. The voicemail itself did not even "imply the existence of a debt" and did "little more than ask someone from Brown's business's payroll department to call back." *Id.* at 742. The voicemail was thus not considered a communication under the FDCPA, because it did not convey any information regarding a debt. *Id.* Unlike the voicemail in *Brown*, the text message requesting Smith's email address was part of a broader message thread that included reference to a debt and an apparent request for payment of that debt. Based on a commonsense inquiry, the Court concludes that the

---

[5] It appears that these follow-up texts came "immediately after" Smith sent her own texts refusing to pay any alleged debt, ECF 1, at 2 ¶ 13, which may indicate that they were automatically induced by Smith's response and by her failure to type "STOP" to "unsubscribe" from receiving future text messages. It may be that this response was automatic and "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely." *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). On the other hand, automatic or not, NCS still had the option of ceasing all communication with Smith after receiving the text indicating that she refused to pay the alleged debt. *See Phillips v. Resurgent Cap. Servs.*, No. 1:24-CV-01051-VMC-LTW, 2025 WL 2743750, at *5 (N.D. Ga. June 26, 2025), report and recommendation adopted, No. 1:24-CV-01051-VMC, 2025 WL 2743685 (N.D. Ga. Sept. 19, 2025) ("After receiving Plaintiff's text [saying she declined to pay a debt], Defendant never again communicated with Plaintiff [about that debt]."). Whatever impact these facts have on this case, like NCS's assertion that it was merely verifying Plaintiff's identity, they are better explored at a later stage.

complaint establishes a plausible inference that the text messages at issue were in connection with the collection of a debt.[6]

The Court notes that in her opposition brief, Smith accuses NCS's counsel of further violation of the FDCPA based on email correspondence on October 21, 2025, "revoking a prior settlement offer." ECF 12, at 2–3. However, Smith's complaint was filed on September 14, 2025, *see* ECF 1, and she "cannot supplement allegations found in [her] complaint by adding allegations through an opposition brief." *J & J Sports Prods., Inc. v. King*, Civ. No. ELH-14-953, 2014 WL 4269073, at *6 n.7 (D. Md. Aug. 27, 2014) (citing *Mylan Laboratories, Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1068 (D. Md. 1991)); *see also S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Accordingly, the Court cannot consider this new accusation.

## IV. CONCLUSION

For the foregoing reasons, NCS's motion to dismiss is denied. A separate implementing order will issue.

Dated: August 12, 2026

/s/
Brendan A. Hurson
United States District Judge

[6] The Court observes that Smith's complaint lacks any details about the debt she allegedly owed. Though she asserts that "[t]he alleged debt at issue arises from a transaction entered into primarily for personal, family or household purposes and is therefore a 'debt' as defined by the FDCPA," ECF 1, at 2 ¶ 7, she fails to provide any facts in support of that conclusory statement. *See, e.g.*, *Sloan*, 2025 WL 2997582, at *3 ("Sloan provides no information about the nature of the transaction that gave rise to the alleged debt. Without this information, the Court cannot plausibly infer that the transaction was primarily for "personal, family, or household purposes," and not for business or commercial purposes[.]") (citations omitted)). However, the Court does not address this issue as it is not raised by NCS as a basis for dismissal. *See Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) (noting that "[f]ederal courts adhere to the principle of party presentation. . . . the rule that points not argued will not be considered" (citation modified)).